Good afternoon, Illinois Appellate Court, 1st District. Court is now in session, the 6th Division, the Honorable Justice Mary Mikva presiding, case number 1-9-2-1-2-5, Christine Gostanyans and Tayden Gostanyans versus Pamela Goodwin, M.D., and North Shore Associates in Gynecology and Obstetrics, S.C. Thank you. Welcome, Counsel. Good afternoon. Before we start timing you, can each of you please state your name for the record, tell us who you represent, and that way we can make sure technically we can hear both of you. Tom Siracusa, S-I-R-A-C-U-S-A, on behalf of the Plaintiff Appellants. Thank you. Good afternoon, Your Honors. Karen DeGrand, D-E-G-R-A-N-D, on behalf of the Defendant Appellees. Okay. And you each have 20 minutes. Mr. Siracusa, would you like to reserve some of that for rebuttal? Five minutes, please. All right. Whenever you're ready, we can start. Thank you. May it please the Court. This is a case about the improper introduction of sole proximate cause into a case via an instruction and special interrogatory when there was no competent evidence of the non-party physician as being the sole proximate cause of the occurrence in this case. And furthermore, where the defense introduced multiple unrelated causes of the child's injury. This is a case, if I may discuss the medical issues briefly, this is a case of a birth injury. The injuries occurred during a vaginal birth. And during normal vaginal deliveries, shoulders may deliver spontaneously without the help of a physician. In some cases, the physician, the delivering physician may need to use what is known as some gentle or guiding traction in order to get the fetal shoulder, the anterior or top shoulder, underneath the mom's pubic bone. And that gentle or guiding traction, as I said, is often used in cases in uncomplicated vaginal births. There are births where the fetal shoulder does not spontaneously deliver underneath the mom's pubic bone in fact become stuck behind the mom's pubic bone. And that's a condition known as shoulder dystocia. And when shoulder dystocia occurs, physicians are taught and trained to avoid applying any traction on the fetal head or neck. Because what happens is when you have the baby shoulder stuck behind the mom's pubic bone. If you put any pressure or traction on the fetal head or neck, while the shoulder is stuck, that serves to stretch a bundle of nerves, known as the brachial plexus. The brachial plexus innervates the upper extremity hand and fingers. It's made up of several nerves from C5 through C8 and T1. And in this case, it was undisputed that at the time of birth, Landon suffered brachial plexus injuries, and it was undisputed that he suffered what is known as a pan plexus injury, meaning that all of the nerves in the brachial plexus were injured, in addition to T1. It was the most severe type of brachial plexus injury, because it included, as documented on MRI, at least one partial avulsion of a nerve, meaning that at least one of the nerves was partially torn from its nerve root. And again, the severity of Landon's injuries and the cause, specifically physician-applied traction, at least in part, was not disputed in this case. The standard of care was established by both plaintiff's expert and defense expert. And plaintiff's expert opined that it would be a deviation from the standard of care for a physician to apply traction when the baby's shoulder is stuck, for the reasons I just discussed, because application of traction on the fetal head or neck with the stuck shoulder risks damage to the brachial plexus. The defense expert agreed. Dr. Adamczyk testified on behalf of defendants, and his testimony was specifically that reasonably careful physicians avoid applying traction on the fetal head and neck when the shoulder is stuck. And he testified that by applying that traction, you increase the risk, the physician increases the risk of a brachial plexus injury occurring. Now, this case was about traction. And the evidence presented established that both the defendant and the non-party physician used traction while Landon's shoulder was stuck. The defendant testified that in her practice, generally speaking, it was her practice to use greater traction when the shoulder was impacted to try and get it to deliver. Again, plaintiff's expert identified that as a deviation from the standard of care. When the shoulder is stuck, you don't use more traction than you typically would. You use less. In fact, when the shoulder is stuck in conditions of shoulder dystocia, there are recognized maneuvers which are taught to physicians, all of which are specifically designed to avoid the use of traction on the fetal head or neck. The defendant further testified that in instances where she has encountered shoulder dystocia, she'll use more traction than she uses in a delivery where the shoulder is not impacted. And specific to this case, the defendant described the traction that she used, her second attempt at traction, which was the traction that was at issue in this case, she described her use of traction as being greater than she would use for an easy delivery. She further admitted that when she used traction for the second time in this case, she was unsure of whether the infant's shoulder had been dislodged. And in fact, we know it was not dislodged. So we have competent admitted evidence of the defendant's use of traction while the shoulder was stuck. Traction which she said is greater than what she would use in an easy delivery. When the defense expert was asked about the traction that the defendant used, he testified that he believed that she had tried to apply a little bit more traction than would be considered gentle. Now, that's important because what we're focusing on here is the application of excessive traction. Excessive is defined as traction used while the baby's shoulder is stuck. We have evidence of the defendant saying she used more traction than she would in an easy delivery. And the defense expert saying he believed, by his review of the medical records and testimony, that the defendant used more than gentle traction. And we know that anytime traction is applied while the baby's shoulder is stuck, that causes a stretching of the brachial plexus. So what we had was admitted evidence of the defendant's conduct being a cause of injury. But based on what the defendant said in her deposition, there was an attempt made to create the non-party as the sole proximate cause. And it's important to mention that in the defendant's two delivery notes, she wrote a delivery note on the day of the delivery. She reviewed and edited and rewrote a note three days later. But in each of those notes, she described conduct on the part of the non-party physician that exculpated him from any cause of injury. Because what she said was that the non-party doctor applied traction only after the shoulder had been dislodged. And she described his traction as gentle. Isn't this argument that you're making now really a credibility decision that the jury made against you? Yes, Your Honor. The argument that we're making does go to her credibility. But the importance of this argument is that regardless of what version of the delivery you believe, there was evidence of the defendant being a cause. And there was no confident evidence of the non-party doctor being the sole cause. And the reason I say that is because when the defendant did decide to talk about the non-party's conduct, she described him as applying traction. She could not identify his traction as being excessive. In fact, she specifically declined to do so. Her only description of the non-party's conduct was that it was more traction than she would apply. And when she was asked specifically if she could say that the non-party applied excessive traction, she said no. She said it's really hard to tell how much traction someone else is applying. The person applying the traction is the only one who can really say how much is being used. She said she did not know if his traction was excessive. It was more than she would give, but she said maybe a contraction came and that's why the shoulder delivered. So the defendant, even after implicating the non-party's conduct in her deposition, did not go far enough to say that his traction was excessive. Importantly, neither did the defense expert. Because all the defense expert said was, I believe Dr. Hutter probably applied more traction than he normally would. But when asked if that traction was excessive, he said, I don't know. And when asked if Dr. Hutter at any time applied excessive traction, he said, I cannot say that he did or not. So what did we have? What did the jury have to make a determination on sole proximate cause? The jury had testimony that the defendant applied traction more than she would with greater force than she would in an easy delivery. They had evidence that the non-party defendant probably applied more traction than he normally would or more traction than necessary. How can a jury, based on that quality of evidence, decipher that evidence to come to a sole proximate cause conclusion? It's not possible. Counsel, is there any device or any way to measure amount of traction? There are devices, Your Honor, that are used in training. But the testimony in this case was that it's a matter of experience. And in this case specifically, the non-party doctor who came to the aid of the defendant during the shoulder dystocia was actually a more experienced physician. And so the testimony was that the physician's level of experience is important in determining how much traction was used. But again, in discussing the quality of evidence that the jurors were required to digest and come to this conclusion, there was indecipherable evidence about the different applications of force that were applied between the force that defendant admitted to and the force that she claimed the non-party used. There was simply no competent basis for them to make the determination on sole proximate cause. And importantly, because the defendants are clinging to the idea that you only need some evidence of another physician's conduct to get to sole proximate cause, that it need not be persuasive evidence. But there's a distinction made because the distinction is clear in the case law, going back to Leonardo. It is true that you only need some evidence, but the evidence has to be competent. And cases like McConnell have discussed that there is a distinction between the idea that you don't have to establish that the actor was negligent, but you do need competent evidence to establish that the non-party's conduct was a proximate cause of the occurrence. And Leonardo uses the word competent. McConnell uses the word competent. Grower, a 2019 decision, uses the word competent and emphasizes in cases like medical negligence cases, even though you do not have evidence that the non-party actor was negligent, you need competent evidence of proximate cause. And having the defendant and her expert come into court and say that the non-party probably used more traction than he normally would, or used more traction than I would, is simply not competent evidence of causation. That would not withstand any challenge as competent causation evidence. And that's the issue, one of the primary issues in this case. And again, the prejudice to the plaintiffs is clear because giving the improper sole proximate cause 1204 and the special interrogatory, once the jurors obviously found that the conduct of a non-party was the sole proximate cause, they had no choice but to find for the defendants. So the confusion created by this sole proximate cause issue, when you had evidence establishing the defendant as a cause, plus the issue of the non-party's conduct and the incompetent evidence that was used there, certainly created prejudice. Additionally, we have the issue of the defendants introducing other potential causes of injury. And again, they did so through the defense expert who talked about the maternal forces of labor and how the maternal forces of labor serve to stretch the brachial plexus. And specifically, the defense expert, when asked what was the cause of this child's injury, his response initially was, I don't know. But he later went on to explain that the forces that occur because the shoulder is stuck and the mom's trying to push the baby out, in addition to physician applied traction, were contributing causes to this baby's injury. And again, the defense expert, despite their attempts to create a sole proximate cause on the non-party's conduct, the defense expert never testified that the non-party's conduct specifically was a cause of injury in this case. He never testified that the non-party applied excessive traction. What he did was insinuate that because the non-party applied the second application of traction, or the application of traction which actually resulted in delivery, he used that to insinuate that that was a cause of injury. He never said the words. But that fails. Again, that fails. Because the defendant herself said, without being able to say that the non-party applied excessive traction, she said maybe a contraction came. And maybe that's why the baby came out. I can't say that Dr. Hutter applied excessive traction. Counsel, you're out of time actually, but I have one question in a different part of your case. Can you explain how the special interrogatory resolves the argument, the two-issue argument that the defendants make? Why is that disposed of by the fact that there was this special interrogatory? Because the special interrogatory explains the basis for the jury's verdict. They found sole proximate cause and therefore were required to find on behalf of the defendant. So there's no issue about what was the… Well, it doesn't say we don't also find for the defendant on standard of care. It doesn't tell you what they decided about that, does it? No, it doesn't, Your Honor. But it does, again, it does control the verdict. And in terms of what they found in terms of the standard of care, we also have a manifest weight argument, which I've discussed in my other argument about there being admitted traction by the defendant, which the defense expert said would have caused or contributed to stretching of the nerve. And this is a case where stretching of the nerve was the admitted cause of this child's injuries. Any questions from anybody else? Yeah. Counsel, can you explain to me the distinction the trial court made relative to interrogatory, or excuse me, jury instruction 12.04 and 12.05, why the second period was included in one and not in the other? Yes, Your Honor. Thank you. That's an important question because when we discussed 12.04 and 12.05, we discussed both long forms. And the trial judge ruled that the long form of 12.05 was not appropriately given because the defendants had introduced evidence of other causes of injury. And it is our position that for the same reason, for the same reasoning, 12.04 was improper. If 12.05 was improper because there were multiple causes of injury introduced, then 12.04 would have been equally improper, both because there were multiple parties involved as having causative impact. And this other issue, which defense put into the case of the maternal forces of labor. Thank you. Thank you. Thank you, Counsel. Let's hear from Mr. Grand and then we'll hear from you on rebuttal. Thank you. I'm sorry, I was speaking when I was on mute. Good afternoon, Your Honors. Karen DeGrand on behalf of Dr. Goodwin and North Shore Associates in Gynecology and Obstetrics, the appellees. May it please the court. Listening to plaintiff's counsel today, what I hear is a closing argument, which discusses testimony he wished had convinced the jury. But the jury was not convinced by Dr. Gubernick's spin, actually speculation, or by counsel's and Dr. Gubernick's attacks on Dr. Goodwin's credibility. Instead, the jury returned a verdict based on the evidence that opposing counsel did not mention today and does not acknowledge in the briefs that were filed. This court should uphold the verdict on the most basic appellate rule. The evidence is interpreted in the light most favorable to the appellees, the verdict winner. The court can accept plaintiff's request for relief only by ignoring Dr. Goodwin's testimony. But, and respectfully, the court is not the fact finder and is not free to do that. Dr. Goodwin was the only witness who could testify to the facts on the single issue before the jury. Did Dr. Goodwin use excessive traction to resolve the shoulder dystocia? And she testified, no, she did not. And she explained she never uses excessive traction. She did not in this delivery. There are degrees of gentle traction. And throughout the briefs and of course today, counsel refers to using more traction than would ordinarily be used on a baby whose shoulder was not impacted. Dr. Goodwin explained her traction still was in the range of gentle. There are degrees of gentle traction and no amount of speculation by Dr. Gubernick could eliminate that testimony. And speaking of Dr. Gubernick, his testimony has to be questioned even as to whether it was sufficient in establishing the standard of care. His theory and the plaintiff's theory was Dr. Goodwin deviated based on Dr. Gubernick's speculation about the delivery events. But he never says what should have been done to deliver the baby. What should Dr. Goodwin have done? What should Dr. Hutter have done? That question is not answered. The standard of care was not provided to the jury. So this actually is a classic sole praximate cause situation under the Supreme Court's governing case law. And that is the case law that the trial judge very appropriately used to reach her decision in allowing 12.04, the special interrogatory, and in denying plaintiff's post-trial motion. So what was particularly interesting to me about counsel's presentation this afternoon was there was very little reference to Dr. Gubernick's testimony. From the outset, the plaintiff's position was, the plaintiff's theory was, the injury to the baby resulted from excessive traction. And that was the question for the jury to consider and to consider the testimony of all of the medical witnesses to reach a conclusion. So plaintiff's counsel, even at the very beginning during motions in limine, argued that permanent injuries do not occur unless there is excessive traction. Dr. Gubernick testified on direct examination, on cross-examination, excessive traction caused the injury. He said it repeatedly, using traction forceful enough to deliver the shoulder caused the injury. And we cited all the pages of the record in our brief. So the testimony that Dr. Gubernick gave on direct examination, in which he said that Dr. Goodwin, if Dr. Goodwin, if Dr. Goodwin did not apply excessive traction, if the traction she applied only was gentle, her conduct would not contribute to the injury. It was on direct examination, page 449 of the record. He said it again on cross-examination, page 484 to 85 of the record. So, you know, that testimony, the testimony that, again, by Dr. Gubernick, that gentle traction does not cause a permanent brachial plexus injury. Direct examination, page 440. That set up the sole proximate cause defense. Dr. Gubernick also testified injury can happen with one great pull. And that along with Dr. Goodwin's testimony concerning the events, that she only applied gentle traction when she applied traction the first time, when she applied traction the second time to see if the baby's shoulder has dislodged. Dr. Goodwin also testified that when Dr. Hutter made, that Dr. Hutter came in, he immediately went to apply traction and she said, hold on, she tried maneuvers again. And then when, now we're at four minutes, the maneuvers, she's run through them a couple of times, the baby's shoulder is still impacted. Dr. Hutter and another physician have responded to the shoulder code by everybody's description, an absolute emergency. She stepped away. Dr. Hutter came over. He did not use any, he did not use any maneuvers and he applied traction to get the baby out. That was her testimony. So there, you know, Dr. Adiantic also gave testimony. He's the defendant's expert that supported the sole proximate cause defense. He testified, Dr. Hutter probably used more traction than was necessary. And Dr. Goodwin was not a cause if, as she said, she used gentle traction. So under, you know, the, the, the clear message that could be inferred from this testimony, not the testimony, all of the testimony was that the jury could make the inference that, you know what, this was a, this was a difficult situation. According to Dr. Gubernick, whoever applied excessive traction was the only cause of this injury. And Dr., we believe, we believe Dr. Goodwin. They were the arbiters of the credibility. So the, the, you know, the attack on Dr. Goodwin's credibility again and again by counsel, the closing argument clearly sets up the, the distinction on the argument and the argument that this, what the sole proximate cause issue, it wasn't a multifactorial issue. It wasn't two or three different people were involved. There was a finger being pointed one way, not saying he was negligent, but that he was the only cause. And that was Dr. Hutter, because he was the only one who applied the amount of traction that could deliver the shoulder. And by Dr. Gubernick's definition, that was excessive traction and that caused the injury. If the court accepts the plaintiff's argument, the sole proximate cause instruction and that defense would be permissible only where there is no factual dispute, no inconsistencies in the record. And, you know, counsel speaks somewhat derisively about the some competent evidence standard. That is the standard that has been, that was established by the Supreme Court of Illinois in Loyola, Leonardo versus Loyola, discussed in McPartland, discussed again in the Nolan case and the Reedy case. There is no question that the standard does not require there to be no competing evidence on the issue of proximate cause or sole proximate cause. That is not the definition. And as, you know, the trial judge looked very carefully at all of the opinions that were cited at post-trial and said, I have to follow what the Supreme Court has said. And there, you know, there's no suggestion that an expert must use the specific phrase, Dr. X was the sole proximate cause. But that is the clear, that is a clear inference that can be drawn from the competent testimony. I don't understand why counsel says there was no competent testimony. It was a testimony of his own expert that supported that defense. The only thing, you know, but his expert disregarded and said that Dr. Goodwin's testimony was not credible and he didn't believe her. And, you know, the cross-examination brought all of that out. And the jury listened to both sides and the jury came back with a verdict for Dr. Goodwin. Let me ask you, counsel, the same question that Justice Connors asked your opposing counsel, which is why was it appropriate to get the long form of 1204 and not the long form of 1205? The judge made the decision that there was competent testimony to support the defense with respect to Dr. Hutter, which would be 1204. And the court did not believe that there was sufficient testimony to establish that maternal forces of labor was an alternative. And there can be alternative sole proximate causes. But there was enough evidence to support that and denied the instruction. So it was essentially a judgment call where we're just reviewing it for abuse of discretion in terms of how much evidence. It needs to be slight evidence. But what does that mean? That's exactly right, Justice McFaul. It's a matter of deferring to the sound exercise of discretion of the trial judge as to whether the evidence supported one or either of those instructions. And I don't think that there is any basis at all to draw the conclusion that the judge abused her discretion. I mean, the court need no look no further than the closing arguments to confirm that there was one and only one sole proximate cause defense that the parties framed. The closing argument makes it 100% clear. I know that the court is very well versed on this record, but I went back and reread the closing argument. But it's clearly pertained only to Dr. Hutter and it hinged on Dr. Gubernick's causation theory. So, you know, we can, you know, the council cited the Grower case and there's other decisions that have come down from the appellate court where there's, you know, some disagreement about a combination of causes and so on and so forth. None of that has to be even considered in the context of this case, because that's not what this case is. This was one sole proximate cause actor, Dr. Hutter, and that along with the extensive testimony that established that Dr. Goodwin entirely complied with the standard of care is what is the explanation for the verdict. Now, council very briefly referred to cross examination of Dr. Gubernick. The, you know, that door was open wide open, I'll submit. When the plaintiffs invited Dr. Gubernick to testify at length that Dr. Hutter saved the day, you know, he actually said rode in on his white horse and was the good Samaritan. This was the hero who lucky for Dr. Goodwin came in and took care of the situation. Well, clearly, it was a ruling within the trial court's discretion to allow cross examination of Dr. Gubernick on that on that aspect of his disclosure. And I will submit, however, that the cross examination of Dr. Gubernick and his testimony had other very significant weaknesses. So even if the court disagrees with that ruling, there's no reason to conclude that it prejudiced the outcome of the case. So may I ask you a question about the cross examination of Dr. Gubernick? When the objection was made to his testimony relative to Dr. Hutter, was the basis of the objection given or was it a general objection? And do you recall what the basis was and how the court ruled on that? The basis that the, you know, at trial, I believe that counsel stated, made a reference to the motion eliminating, but I'd have to go back to check the exact objection. Thank you. And I know on appeal, counsel stated that there was, that the cross examination was beyond the scope and mine clearly wasn't. Thank you. Can I answer any other questions for the court? On that basis, your honors, and for all the reasons that we've set forth in the brief, we'd ask that the court affirm the judgment entered on the jury's verdict and denying the order seeking a new trial. Thank you, counsel. Whenever you're ready for rebuttal. Thank you, your honors. I also agree that the court is well-versed in the record. And so I'm not going to argue other than look at the record in terms of why the trial judge denied 1205. It was because of defense expert testimony about forces of labor and that being another cause of injury. I'm interested that Dr. Gubernick is being accused of not listening or disregarding Dr. Goodwin's testimony, the defendant's testimony, because the fact is that Dr. Hunter, the non-party physician, in fact, she said he did nothing wrong and then criticized him beginning at her deposition. So he did, in fact, rely on her testimony. There's one important aspect, respectfully, that the defendants still do not understand about this case. And that is the issue of excessive versus gentle traction. Any traction applied while the shoulder is stuck is defined as excessive. Any traction applied while the shoulder is stuck is excessive traction. That's not only Dr. Gubernick's testimony. Again, the defense expert testified reasonably careful physicians avoid applying traction on the fetal head and neck when the shoulder is stuck. Avoid applying traction. The defense expert does not allow gentle traction within any range as being within the standard of care. And that's where the defense fails. That's where the defense attempt to say, I only apply gentle traction, there's a range of gentle traction, etc., is not sufficient to support a birth in this case, based on the standard set by their own expert. So there was testimony of Dr. Goodwin's, the defendant's, application of traction that would cause a stretch of the brachial plexus, which in and of itself should have prevented the use of sole proximate cause. But again, when counsel says she doesn't understand the issue of why Dr. Hutter's, why the testimony about Dr. Hutter was not competent, again, you cannot establish proximate cause by saying someone did something more than I did, or maybe more than was necessary. That is not medically competent evidence of causation in a medical malpractice case. Someone needed to say Dr. Hutter's conduct was a proximate cause of the injuries. I heard the word infer quite a bit in counsel's argument. And that's what was done here. There was evidence thrown out about a non-parties conduct, and the jurors were asked to infer from that, that he was the sole proximate cause. And that's exactly why, exactly why the issue was improper in this case. Thank you. Thank you both. We will take this matter under advisement, and you will hear from us shortly. Thank you both.